# NO. 12-23-00066-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE MATTER OF* | § | *APPEAL FROM THE* |
| *THE ESTATE OF* | § | *COUNTY COURT AT LAW NO. 3* |
| *HELEN GAYLE WELLS, DECEASED* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Kelcey Melissa Wells appeals the trial court's grant of six interlocutory motions for partial summary judgment in the proceeding below. In seven issues, she challenges the trial court's rulings on exercise of special appointment power, assignment of inheritance rights, fraudulent inducement, Kelcey's standing to bring seventeen claims and affirmative defenses, breach of fiduciary duty, residuary trust distributions, and the award of attorney's fees. We affirm in part, reverse and render in part, and reverse and remand in part.

## BACKGROUND

Don Wells and Helen Wells were married in 1948 and subsequently had two children, Kevin Wells and Karen Donnell Wells. Kelcey is Kevin's daughter. In 1994, Don and Helen executed "mirror image" wills. Don's will, in relevant part, left almost his entire estate to the trustee of a Residuary Trust created for the benefit of "(1) my spouse; (2) one or more of my children; and (3) one or more of my descendants, whether the parents of such descendants are living or dead." Don named Helen as trustee of the Residuary Trust, named Kevin as first alternate trustee, and granted Helen a power of appointment over the Residuary Trust, which reads in relevant part:

Testamentary Power of Appointment.  Upon the death of my spouse, the then remaining principal and undistributed income of the trust estate shall be distributed in such proportions and in such manner to or for the benefit of any one or more persons included in the group consisting of my descendants or spouses of my descendants, as my spouse may appoint by specific reference in my spouse's last will and testament, or codicil thereto, (admitted to probate).  The power herein granted shall in no event be exercised by my spouse in favor of my spouse, my spouse's creditors, my spouse's estate or creditors of my spouse's estate. . . . To the extent that my spouse shall not exercise the foregoing testamentary power of appointment, then upon my spouse's death the then existing corpus and undistributed income of such trust estate shall be held and distributed as hereinafter provided, in all respects as if such power of appointment had not been granted.

Don's will contained additional instructions regarding exercise of testamentary powers of appointment:

Exercise of Testamentary Power of Appointment.  Each testamentary power of appointment granted in this Will shall be exercised by a Will or any codicil thereto which (i) is executed in accordance with the formalities required at the time of the exercise of the power by the laws of the state of the donee's domicile and (ii) specifically refers to such power of appointment. . . .

If Helen did not exercise this power of appointment, then upon Helen's death, the assets of the Residuary Trust would be distributed equally to Kevin and Karen.  In November 2010, Don and Helen each executed a codicil to their respective 1994 wills which named Karen as first alternate trustee of the Residuary Trust in place of Kevin.  Don died on November 17, 2012.

On January 7, 2013, Helen signed a new will, drafted by Karen. On the same day, Helen signed a document wherein she resigned as trustee of the Residuary Trust, causing the first alternate trustee, Karen, to become trustee.  In the same document, Helen renounced her position as executrix of Don's estate in favor of Karen.  As trustee of the Residuary Trust, Karen never funded the trust, did not keep any records related thereto, and did not provide any type of accounting to the trust beneficiaries.  Kelcey alleges that Karen never sent Kevin a copy of Don's will, never notified Kevin that he was a beneficiary of the Residuary Trust, and never made any distributions from the Residuary Trust to Kevin.

Helen Wells died on December 13, 2013.  On November 18, 2015, Karen filed an application to probate Don's will and for issuance of letters testamentary.  Over one year later, Karen filed an amended application to probate Don's will as a muniment of title.  Also on November 18, 2015, Karen filed an application to probate Helen's will and for issuance of letters testamentary, which was subsequently dismissed for want of prosecution.  The Last Will and Testament of Don Wells was entered for probate as a muniment of title on March 14, 2017.  On

October 25, Karen filed an application to probate Helen's will as a muniment of title. The trial court admitted Helen's will to probate as a muniment of title on November 28. However, on December 22, Kelcey moved to modify and requested that the court vacate its November 28 order and instead appoint a personal representative. In an amended motion filed February 26, 2018, Kelcey applied for issuance of letters testamentary and requested that she be appointed personal representative of Helen's estate. The court vacated its November 28, 2017, order on March 9, 2018, and scheduled a hearing for appointment of an executrix. At the hearing on May 1, the court found that Karen was disqualified from serving as executrix because of her previous felony convictions, and appointed Kelcey as the independent executrix of Helen's estate.[1]

## The "Disclaimer" by Kevin Wells

Helen's will provided, in relevant part, that Kevin was to have no ability to interfere in the management of her estate, "except to accept or reject his bequeathment." In a November 24, 2015, letter to Kevin, Karen requested that he provide a "written, signed, witnessed and notarized" statement that he was "rejecting [his] inheritance." Karen stated that if she did not receive this document within a set time, she would "not pay the 2015 taxes on [Kevin's] house," and "the State will also take what Mother left you[.]" Karen followed the letter with an e-mail, sent February 29, 2016, again requesting that Kevin "sign the statement I sent you," and explaining that her lawyer would have to "persuade the judge that you have the right to invoke" "the clause in [Helen's] will giving you the option to accept or reject your inheritance." The e-mail further states that Karen intends to "do what Mother wanted me to do with your part of the money – which is give it to you," but that if Kevin does not provide the requested document, "[his] future is going to be exceedingly bleak" and Karen "will not ever again raise a finger to help [him]." The record contains a notarized and witnessed document, which Karen testified she drafted for Kevin's signature, that appears to have been signed by Kevin on April 4, 2016. The document reads, in relevant part:

> I, Kevin Douglas Wells, being of sound mind and having thoroughly read and understand the wording in the last will and testament of my late mother, Helen Brown Wells, wish to invoke the paragraph in her will allowing me to reject the inheritance given to me in her last will and testament. I hereby relenquish and quit any and all claims to any and all parts of the estate of the deceased, Helen Brown Wells. By rejecting any and all heirship in the estate of the late Helen Brown Wells, I am now and forever acknowledging that my sister, Karen Donnell Wells, the only

---

[1] In December 2018, Kelcey was removed as executrix of Helen's estate on Karen's motion and replaced by an independent successor administrator.

other child of the late Helen Brown Wells is the sole heir to my Mother, the late Helen Brown Wells' entire estate.

. . .

I pray that the judge will honour my decision and allow my only other sibling and child of Helen Brown Wells to inherit the complete and unhindered estate of the late Helen Brown Wells in its entire amount.

Kevin died on April 19, 2017, and Kelcey was appointed representative of Kevin's estate.

## Kelcey's Claims against Karen

On July 16, 2018, having received information that Karen made transfers from Don's and Helen's accounts to her own personal account, Kelcey filed a lawsuit against Karen for conversion of funds. Kelcey amended her petition numerous times throughout the pendency of the litigation to add additional claims and affirmative defenses (both on her own behalf and on behalf of Kevin's estate), filing her Eighth Amended Petition on November 8, 2021.

On March 12, 2019, Karen moved for partial summary judgment and asked the court to determine that Helen validly exercised the power of appointment she received via Don's will over the assets that would have been part of the Residuary Trust. Kelcey filed a cross-motion, asking the court to find that Helen did not validly exercise the power of appointment. On June 10, the court issued an order granting Karen's motion, denying Kelcey's motion, and specifically finding that Helen validly exercised the power of appointment over the aforementioned assets "and gave them to [Karen]."

On March 6, 2020, Karen moved for partial summary judgment on grounds that the document Kevin signed on April 4, 2016, was an assignment by him to Karen of the bequest to Kevin contained in Helen's will. On March 18, 2021, Karen filed a no-evidence motion for summary judgment on Kelcey's affirmative defense that the document was the product of fraudulent inducement by Karen. On September 28, the court granted Karen's motion for partial summary judgment and found that the document was an assignment by Kevin of his bequest from Helen's will to Karen. That same day, the court granted Karen's no-evidence motion for partial summary judgment and dismissed Kelcey's affirmative defense that the document signed by Kevin was the product of fraudulent inducement.

Karen then filed two additional motions for partial summary judgment related to the claims Kelcey asserted in her Eighth Amended Petition for Damages. First, on March 16, Karen moved for summary judgment on grounds that the claim for breach of fiduciary duty was barred

by limitations. Second, on December 6, Karen moved for a no-evidence summary judgment on the claim, for distributions from the Residuary Trust. Also on December 6, Karen moved for partial summary judgment on several of Kelcey's claims and affirmative defenses, arguing that the court's previous summary judgment rulings deprived Kelcey of standing to pursue those claims and defenses. On February 8, 2022, the court issued orders granting all three outstanding motions for partial summary judgment. The court dismissed both Kelcey's claims for breach of fiduciary duty and those related to Karen's failure to make distributions as trustee of the Residuary Trust. Further, the court dismissed seventeen of the claims and affirmative defenses asserted by Kelcey in her Eighth Amended Petition on the ground that she lacked standing to assert same.

On August 15, Karen submitted a request for an award of attorney's fees pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code, accompanied by the affidavit of her counsel, Kenneth E. Raney. Subsequently, the trial court entered a judgment in favor of Karen for attorney's fees of $66,098.61 and costs of appeal of $25,000.00.

The court entered a Final Judgment disposing of the lawsuit in its entirety on February 14, 2023. Subsequently, Kelcey filed this appeal challenging the court's ruling on all six partial summary judgments and the award of attorney's fees.

### SUMMARY JUDGMENT STANDARD OF REVIEW

On appeal, both no-evidence and traditional motions for summary judgment are reviewed de novo, and we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *EP Hotel Partners, LP v. City of El Paso*, 527 S.W.3d 646, 653 (Tex. App.—El Paso 2017, no pet.).

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). Once the movant establishes a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). We will reverse the summary judgment and remand the cause for a trial on the merits if the summary

judgment was improperly granted.  *See* **Gibbs v. Gen. Motors Corp.**, 450 S.W.2d 827, 828–29 (Tex. 1970).

When both parties move for partial summary judgment on the same issues, the reviewing court considers evidence presented by both sides and determines all questions presented. **Valence Operating Co. v. Dorsett**, 164 S.W.3d 656, 661 (Tex. 2005).  In this situation, if the reviewing court determines that the trial court erred, the reviewing court renders the judgment the trial court should have rendered.  *Id.*

In a no-evidence summary judgment motion, the party without the burden of proof moves for summary judgment on the ground that there is no evidence to support one or more essential elements of the nonmovant's claim or defense.  TEX. R. CIV. P. 166a(i).  The motion must specifically state the elements for which there is no evidence.  *Id.*; **Johnson v. Brewer & Pritchard, P.C.**, 73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence that raises a genuine issue of material fact as to the elements specified in the motion. TEX. R. CIV. P. 166a(i); *see also* **KMS Retail Rowlett, LP v. City of Rowlett**, 593 S.W.3d 175, 181 (Tex. 2019).  Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact.  **KMS Retail Rowlett, LP**, 593 S.W.3d at 181.  More than a scintilla of evidence exists when the evidence "would enable reasonable and fair-minded people to differ in their conclusions." **Hamilton v. Wilson**, 249 S.W.3d 425, 426 (Tex. 2008).

A defendant urging summary judgment on an affirmative defense is in the same position as a plaintiff urging summary judgment on a claim.  **Valley Forge Motor Co. v. Sifuentes**, 595 S.W.3d 871, 876 (Tex. App.—El Paso 2020, no pet.); *see also* **Tex. Beef Cattle Co. v. Green**, 921 S.W.2d 203, 212 (Tex. 1996) ("An affirmative defense does not seek to defend by merely denying the plaintiff's claims, but rather seeks to establish an independent reason why the plaintiff should not recover.").

### EXERCISE OF POWER OF APPOINTMENT

In her first issue, Kelcey argues that the trial court erred by granting Karen's motion for partial summary judgment (and denying Kelcey's cross-motion), finding that Helen validly exercised her power of appointment over the Residuary Trust.

6

**Applicable Law**

Absent ambiguity, the interpretation of a will is a matter of law. *Est. of Rhoades*, 502 S.W.3d 406, 419 (Tex. App.—Fort Worth 2016, pet. denied). In construing a will, our focus is on the testator's intent, which is ascertained by looking to the provisions of the instrument as a whole, as set forth within the four corners of the instrument. *Stephens v. Beard*, 485 S.W.3d 914, 916 (Tex. 2016) (citing *Perfect Union Lodge No. 10 v. Interfirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex. 1988)). Thus, the court should focus not on what the testator intended to write, but the meaning of the words actually used. *Id.* (citing *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000)).

Generally, the will should be construed so as to give effect to every part of it if the language is reasonably susceptible of that construction. *Id.* When possible, all parts of the will must be harmonized, and a latter clause in a will must be deemed to affirm, not to contradict, an earlier clause in the same will. *In re Est. of Slaughter*, 305 S.W.3d 804, 809 (Tex. App.—Texarkana 2010, no pet.). A will is ambiguous only when the application of established rules of construction leave its terms susceptible to more than one reasonable meaning. *Est. of Rhoades*, 502 S.W.3d at 415–16. If the court can give a certain or definite legal meaning or interpretation to the words used, the will is unambiguous, and the court should construe it as a matter of law. *Id.* Consequently, we review the construction of an unambiguous will de novo. *Jarvis v. Feild*, 327 S.W.3d 918, 930 (Tex. App.—Corpus Christi 2010, no pet.).

A power of appointment is a power of disposition given to a person over property not his own, by someone who directs the mode in which that power shall be exercised by a particular instrument. *Doggett v. Robinson*, 345 S.W.3d 94, 99 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Wright v. Greenberg*, 2 S.W.3d 666, 670-71 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). However, a power of appointment is not itself property; the authority given to the donee of a power of appointment does not vest in him any estate, interest, or title in the property which is the subject of the power. TEX. PROP. CODE ANN. § 181.001 (West 2023); *Doggett*, 345 S.W.3d at 99 (citing *Krausse v. Barton*, 430 S.W.2d 44, 47 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.)). Unless the instrument creating a power of appointment expressly provides to the contrary, a donee may exercise a power in any manner consistent with Chapter 181, subchapter C, of the Texas Property Code. TEX. PROP. CODE ANN. §§ 181.081 *et seq.* (West 2023). "A testator may not exercise a power of appointment through a residuary clause in the

testator's will or through a will providing for general disposition of all of the testator's property unless: (1) the testator makes a specific reference to the power in the will; or (2) there is some other indication in writing that the testator intended to include the property subject to the power in the will." TEX. ESTATES CODE ANN. § 255.351 (West 2023) (formerly Texas Probate Code 58(c)).

Our examination of relevant case law shows that no Texas court has examined what constitutes "some other indication" that would satisfy the requirements of Section 255.351(2) (including under that Section's former designation, Probate Code Section 58(c)). However, cases decided under the common law prior to Section 58(c)'s enactment indicate that for a will to constitute the exercise of a power of appointment (absent a specific reference thereto), the intent to exercise such power must be so clear that no other reasonable intent can be imputed under the will. "If, from the circumstances or the instrument executed, it be doubtful as to whether it was the intention to execute the power possessed by the grantor, then it will not be held that by such act or conveyance that power was in fact executed." *Republic Nat. Bank of Dallas v. Fredericks*, 283 S.W.2d 39, 46-47 (1955). Although at least three Texas cases opined that the party granting a power of appointment "directs the mode in which that power shall be exercised by a particular instrument," we similarly find no Texas law examining the *impact of noncompliance* with a restriction, set forth in the instrument creating a power of appointment, on the method by which the donee may exercise said power.[2] *See, e.g.*, *id.* at 46; *Doggett*, 345 S.W.3d at 99; *Wright*, 2 S.W.3d at 670-71. We note that the Texas Property Code generally acknowledges that restrictions in the instrument creating a power may restrict the donee's exercise thereof but does not address specific reference requirements. TEX. PROP. CODE ANN. § 181.081.

**Analysis**

Helen's will contains the following relevant language:

---

[2] Our sister court in *Doggett v. Robinson* assumed without deciding that a certain will provision made a specific reference to the power of appointment. 345 S.W.3d 94, 100 (Tex. App.—Houston [14th Dist.] 2011, no pet.). One of the parties asserted, quoting the Restatement (Second) of Property, that "Failure by the donee to comply with the formal requirements imposed by the donor in regard to the exercise of power may prevent an effective exercise of it even though the intention of the donee to exercise the power is otherwise clearly manifested." *Id.* at 104 n.6. However, the court did not address this ground.

8

It is my intention in this brief, but carefully worded Will to dispose of all of my Worldly Estate. That includes all property inherited from my late Husband, all of his personal belongings and all assets that were transferred to me as his Sole Heir upon his death. The bulk of my Estate consists of Community Property acquired by both Don L. Wells and Myself during our marriage and our Lifelong Partnership. All of these assets along with my personal and household items that include Jewelry, China, Clothing, Artwork and Collectibles housed at my address at 3444 CR 384, TYLER, TEXAS 75708 are all things owned at my death and constitute my Estate.

…

I do not intend to exercise any power of appointment that I now possess or that may hereafter be conferred on me unless such a power is specifically referred to in this Will or in any codicil to this Will.

…

I have the right and the free will to invoke my own wishes as to the distribution of all real property, financial assets, personal property, farm equipment, livestock, vehicles, stocks, bonds, firearms, coins, artwork, furniture, linens, china, household goods, jewelry, clothing, appliances and papers of any value along with any separate property that I might own that I am sole Trustee, Executrix and Beneficiary of since [Don's] death.

…

It is my last wish that the terms of this Will be executed in the manner which I have laid out in the next paragraphs. Both myself and my late Husband were in agreement that the provisions of my Will would encompass our true wishes and desires as to the disposition of our combined Estates when it became obvious that his death would preceed [sic] my own.

…

I, being fully capable of deciding who I want my possessions to be handed down to and why I want them distributed to each of my children in the following manner do bequeath all of my real property, homestead, mineral rights, farm equipment, vehicles if viable, jewelry and personal property, cash, bank accounts, firearms, stocks, bonds and securities, household items, and furs and clothing, in other words, all material possessions in my name and under my control at the time of my demise to become the sole property of my daughter, KAREN DONNELL WELLS.

Kelcey argues that the trial court erred in granting summary judgment because Don's will required Helen to exercise her testamentary power of appointment by specific reference to said power in her will, and Helen's will contains no such specific reference. Moreover, Helen's will contains a specific statement that her intent was not to exercise any powers of appointment unless specifically referenced elsewhere. Conversely, Karen asserts that Helen exercised the power of appointment in accordance with Texas law by making "some other indication in writing" that she intended to include the property subject to the power in the will. Karen further contends that the sentence stating Helen did not intend to exercise any powers of appointment is inconsistent with Helen's intent as expressed in the rest of the will, and therefore must be rejected in construing the will as a whole. *See* **Floyd v. Floyd**, 813 S.W.2d 758, 761 (Tex. App.—El Paso 1991, writ denied).

We do not decide whether the specific-reference requirement in Don's will renders ineffective any attempted exercise of the appointment power that lacks such a specific reference

(although both parties agree upon the lack of such reference). Instead, after applying the aforementioned general principles of will construction to Helen's will, we conclude that the intent of the testator is clear from a reading of the entire instrument and the words she used.

In examining the exact words used in Helen's will, we note that she states her intention to transfer "all of my Worldly Estate" (which she initially defines as including property she inherited from Don, community property acquired by herself and Don during their marriage, and her personal and household items, but later expands to include real property, financial assets, farm equipment, livestock, vehicles, stocks, bonds, firearms, and "papers of any value"). She further expresses her intention to dispose of "any separate property that I might own that I am sole Trustee, Executrix, and Beneficiary of since [Don's] death," and states that Kevin is not to inherit anything from "my Estate" other than a defined monetary bequest. Finally, she bequeaths to Karen "all material possessions in my name and under my control at the time of my demise."

Helen's explicit statement that (barring any subsequent specific references) she does not intend to exercise any powers of appointment does not conflict with the above statements of intent but can be read in harmony with the rest of the will. *See **Floyd***, 813 S.W.2d at 761 (citing ***Republic National Bank of Dallas***, 283 S.W.2d at 43) (entire instrument should be considered and all provisions harmonized, if possible). A power of appointment is not, itself, property, and the donee of a power of appointment does not receive any interest in or title to the property subject to said power of appointment. TEX. PROP. CODE ANN. § 181.001. So, the power of appointment given to Helen by Don's will is not part of Helen's estate, something she owns, or a material possession "in [her] name and under [her] control,"—meaning that when she discusses disposing of items in these categories, she is not referencing any property subject to the power of appointment.[3] The sole explicit or implicit reference in Helen's will to the power of appointment is the provision stating that she does *not* intend to exercise any such powers. And in the absence of a specific reference to the contrary, the remainder of Helen's will therefore lacks any "other

---

[3] Whether "all material possessions in my name and under my control" is meant to denote only material possessions both in Helen's name and under her control, or material possessions in Helen's name and, separately, material possessions under her control, a power of appointment is not a "material possession." We further note that on the same day Helen executed her will, she executed her resignation as trustee of the Residuary Trust, such that at the time of Helen's death, any assets covered thereby were no longer under her control.

10

indication" from which we may infer an intent to exercise the power of appointment created by Don's will.[4]  *See* TEX. ESTATES CODE ANN. § 255.351.

We conclude that the trial court erred in granting Karen's motion for partial summary judgment and denying Kelcey's cross-motion.  We sustain Kelcey's first issue.

**ASSIGNMENT OF INHERITANCE RIGHT**

In her second issue, Kelcey contends that the trial court erred in granting Karen's motion for partial summary judgment, finding Kevin executed a valid assignment of his interest in Helen's estate to Karen, rather than an ineffective disclaimer.

**Applicable Law**

A beneficiary of a will may disclaim his right to a bequest under Chapter 240.009 of the Texas Property Code, which sets forth certain requirements for the form, contents, and delivery of the disclaimer.  TEX. EST. CODE ANN. § 122.002 (West 2023); TEX. PROP. CODE ANN. § 240.009 (West 2023).[5]  A disclaimer of a property interest passing because of a decedent's death takes effect as of the time of that death, and the disclaimed interest then passes as if the disclaimant had died immediately before the time as of which the disclaimer takes effect. TEX. PROP. CODE ANN. § 240.051(b), (e) (West 2023).

The Estates Code provides that a person who is entitled to receive property (or an interest in property) from a decedent by inheritance, and who does not disclaim the property, *may* assign the property to any person.  TEX. EST. CODE ANN. § 122.201 (West 2023).  In general, "assignment" refers to the transfer of property or some right or interest from one person to another.  ***Sanders Oil & Gas, Ltd. v. Big Lake Kay Constr., Inc.***, 554 S.W.3d 79, 91 (Tex. App.—El Paso 2018, no pet.).  However, an assignment of property under Chapter 122, Subchapter E of the Estates Code, "is a gift to the assignee." TEX. EST. CODE ANN. § 122.205

---

[4] A residuary clause in the donee's will is treated as manifesting an intent to exercise a power of appointment in certain limited circumstances if the donee silently failed to exercise the power, but not if the donee released the power or expressly refrained from exercising it.  Restatement (Third) of Property (Wills & Don. Trans.) § 19.2 (2011).

[5] The Texas Estates Code formerly contained a provision stating that a disclaimer of a bequest that did not meet these requirements was ineffective in general, but specifically functioned as an assignment to those who would have received the property had the person who attempted the disclaimer died before the decedent.  TEX. EST. CODE ANN. § 122.102 (West 2014).  However, in 2015, the Texas Legislature codified the Texas Uniform Disclaimer of Property Interests Act, which repealed Section 122.102 and does not contain any language regarding an ineffective disclaimer automatically becoming effective as an assignment.  H.B. 2428, 84th Leg., R.S. (Tex. 2015).

11

(West 2023). "An assignment is construed to have been made when the owner of a right manifests its intention to transfer the right to an assignee; an assignment is the act by which a transfer is effected." *Com. Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 833 (Tex. App.—Fort Worth 2006, no pet.).

An assignment is a contract between the assignor and assignee; therefore, in construing a written assignment, an appellate court applies the rules of interpretation and construction applicable to contracts. *Matter of Est. of Abraham*, 583 S.W.3d 374, 379 (Tex. App.—El Paso 2019, pet. denied); *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 58 (Tex. App.—San Antonio 2005, pet. denied). In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). In discerning the parties' intent, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* We begin our analysis with the contract's express language. *Id.* We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Valence Operating Co.*, 164 S.W.3d at 662. It is the parties' objective intent, as expressed in the document, not their subjective intent, which may not have been expressed, that controls our construction of the contract. *Matagorda County Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) (per curiam). When a written instrument is worded so that it can be given a definite meaning or interpretation, it will be interpreted as a matter of law. *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 333. But "if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). If the ordinary rules of construction leave reasonable doubt as to a contract's interpretation, the ambiguous contract is construed against the drafter. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990).

## Analysis

Although Karen previously asserted before the trial court that the document in question was in fact a disclaimer, neither Kelcey nor Karen contends on appeal that the alleged assignment by Kevin (the April 2016 Document) is an effective disclaimer of his inheritance

12

under Helen's will. Instead, Karen asserts that instead of being merely an ineffective disclaimer, the April 2016 Document constitutes an assignment by Kevin to Karen of said inheritance.

Kelcey argues that the trial court should have denied summary judgment on four specific grounds—(1) Karen failed to show that Kevin Wells signed the April 2016 Document; (2) the April 2016 Document is not an assignment to Karen because it does not manifest Kevin's intent to transfer his inheritance to Karen; (3) there was no consideration to support any assignment; and (4) there is a genuine issue of material fact as to whether Kevin was fraudulently induced into signing. Conversely, Karen argues that (1) Kelcey waived her objection to the April 2016 Document's authenticity; (2) the language of the April 2016 Document identifies it as an assignment; (3) no consideration was required for the assignment to be valid; and (4) Kelcey presented no evidence of the elements of fraudulent inducement.[6]

*Evidentiary Objection*

Kelcey contends that the trial court erred in considering the April 2016 Document because it was not authenticated and thus constituted inadmissible hearsay, specifically on the issue of whether Kevin was truly the person who signed the document. She argues that the affidavit of Kenneth Raney cannot authenticate the April 2016 Document both because he lacks personal knowledge as to whether Kevin signed it, and because the document is not self-proving. However, beginning in her Fourth Amended Petition (the live pleading at the time Karen moved for summary judgment on the nature of the April 2016 Document) and continuing through each subsequent petition through her Eighth Amended Petition, Kelcey included under the subheading "Facts" the statement that "Kevin signed the disclaimer on April 4, 2016." Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions, which serve as a formal waiver of proof on the facts asserted. *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 828 (Tex. 2022); *In re A.L.H.*, 515 S.W.3d 60, 81 n.5 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). And movants may rely on allegations in an opposing party's pleadings that constitute judicial admissions as evidence to support a motion for summary judgment. *Weekley Homes, LLC*, 646 S.W.3d at 828; *see also Regency Field Servs.,*

---

[6] In her motion for partial summary judgment on the issue of the assignment, Karen's sole supporting argument was that because the document did not fulfill the statutory requirements to be a valid disclaimer, it "could only be construed to be an Assignment[.]" She did not cite any legal authority or provide any substantive analysis in support of this contention. She first made arguments regarding the language of the document, the necessity of consideration, and the alleged fraudulent inducement in her reply brief to the trial court.

13

***LLC v. Swift Energy Operating, LLC***, 622 S.W.3d 807, 819 (Tex. 2021) ("For summary-judgment purposes, [movant] could treat [non-movant's] pleaded allegations as truthful judicial admissions and rely on them to define the issues[.]").  Through the assertions of fact in her pleadings, Kelcey waived proof on the issue of whether Kevin signed the April 2016 Document.  We review a trial court's decision to admit evidence for an abuse of discretion, which occurs when the ruling falls outside of the zone of reasonable disagreement.  ***Ellis v. State***, 517 S.W.3d 922, 928 (Tex. App.—Fort Worth 2017, no pet.).  Assuming without deciding that the trial court implicitly overruled Kelcey's evidentiary objection to Karen's summary judgment evidence, we cannot conclude that the trial court abused its discretion in doing so.  We overrule this portion of Kelcey's second issue.

### *Contract Interpretation*

We review the April 2016 Document to determine whether Kevin manifested an intention therein to transfer his bequest to Karen, as is necessary to effect an assignment.  ***Com. Structures & Interiors, Inc.***, 192 S.W.3d at 833.  On appeal, the primary substance of the parties' arguments is whether the ordinary meaning of several words used in the document indicates the necessary intent.[7]  To determine a term's common, ordinary meaning, we typically look first to dictionary definitions, but may also consider the term's usage in statutes, court decisions, and similar authorities.  ***Tex. Dep't of Crim. Just. v. Rangel***, 595 S.W.3d 198, 208-09 (Tex. 2020).

In the document, Kevin states that he "wish[es] to invoke the paragraph in [Helen's] will allowing me to reject the inheritance given to me[,]" and is "rejecting any and all heirship" in Helen's estate.[8]  Black's Law Dictionary defines "rejection" as "a refusal to accept a contractual offer."  REJECTION, Black's Law Dictionary (11th ed. 2019).  The Oxford English Dictionary gives the definitions "[t]o refuse to have or accept for some purpose," "to set aside or discard as

---

[7] Karen also cites to the April 2016 Document's statement that "this document is to be placed along with the will in the probate court" as showing that the document was intended to be an assignment.  Although the Estates Code states that an assignment of a bequest may be filed with the county clerk, this is not dispositive as to the nature of the document, as more than just written assignments are recorded in the county records.  TEX. EST. CODE ANN. § 122.201 (West 2023).  For example, disclaimers must also either be delivered to the personal representative of the decedent's estate or, if none is serving, filed in the official public records of the relevant county.  TEX. PROP. CODE ANN. § 240.102 (West 2023).

[8] The word "reject" appears only once in Helen's will, in Section VI, paragraph E, which states Helen's wish that Kevin have no involvement in the management of her estate, and further states that Kevin "is to have no standing except to accept or reject his bequeathment."

14

useless or worthless," or "to turn down," and the Merriam-Webster Dictionary provides the definition "to refuse to accept, consider, submit to, take for some purpose, or use."[9]

Kevin further declares, "I hereby relenquish [sic] and quit any and all claims" to the estate. Black's Law Dictionary defines "relinquish" as "[t]he abandonment of a right or thing." RELINQUISHMENT, Black's Law Dictionary (11th ed. 2019). The Oxford English Dictionary gives the definition "[t]o give up, resign, surrender (a possession, right, etc.)," while the Merriam-Webster Dictionary provides multiple definitions, including "give up," "stop holding physically," and "to give over possession or control of."[10] Looking at the term's use in other judicial decisions, our sister court found that "relinquish" ordinarily means "an act of giving up or giving over possession or control of," as well as merely "to give up." *In re T.R.L.*, 654 S.W.3d 16, 19 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *In re S.A.H.*, 420 S.W.3d 911, 922 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Similarly, Black's Law Dictionary defines the word "quit" as "to leave or surrender possession of (property)." QUIT, Black's Law Dictionary (11th ed. 2019). The Oxford English Dictionary gives the definition "[t]o leave, resign, or withdraw from," and the Merriam-Webster Dictionary provides the same definition as for "relinquish," namely "give up."[11]

Finally, the April 2016 Document states that by signing, Kevin is "acknowledging" that Karen, Helen's only other child, is the "sole heir" to the estate, and asks the probate court to "honour my decision and allow my only other sibling and child of Helen Brown Wells to inherit" the estate "in its entire amount." Black's Law Dictionary defines "acknowledge" as "[t]o recognize (something) as being factual or valid." ACKNOWLEDGE, Black's Law Dictionary (11th ed. 2019). The Oxford English Dictionary gives the definition "[t]o accept or admit the

---

[9] *See Reject*, Oxford English Dictionary, https://www.oed.com/search/dictionary/?q=reject (last visited October 19, 2023); *Reject*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/reject (last visited October 19, 2023). We cite the Oxford English Dictionary and the Merriam-Webster Online Dictionary for various definitions, not as the authoritative definition of any word or term but to inform a generally understood definition of the term or word. *See, e.g.*, **City of Fort Worth v. Pridgen**, 653 S.W.3d 176, 183–84 (Tex. 2022).

[10] *See Relinquish*, Oxford English Dictionary, https://www.oed.com/search/dictionary/?q=relinquish (last visited October 19, 2023); *Relinquish*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/relinquish (last visited October 19, 2023).

[11] *See Quit*, Oxford English Dictionary, https://www.oed.com/search/dictionary/?q=quit (last visited October 19, 2023); *Quit*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/quit (last visited October 19, 2023).

existence or truth of (something)."[12]  Finally, the Merriam-Webster Dictionary defines the word as "to recognize the rights, authority, or status of," as well as "to recognize as genuine or valid."

Although Karen argues that the use of these words definitively evidences Kevin's intent to hand over his inheritance *to her*, the words are susceptible to multiple common meanings, many of which do not contemplate any specific recipient of the refused property.  And we find relevant that the law permits a party to merely refuse a bequest via a signed document if certain statutory requirements are met, without necessarily assigning that bequest to any other person.  Moreover, notably absent from the April 2016 Document are words such as "assign," "transfer," "give," or "convey."  Reviewing the record in the light most favorable to Kelcey as nonmovant, and resolving any doubts against the motion, we cannot conclude that the express language of the April 2016 Document gives rise to a definite meaning that we may interpret as a matter of law. *See Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848; *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 333.  We conclude that the April 2016 Document is susceptible to more than one reasonable interpretation and its ambiguity creates a material fact issue as to intent.  *See J.M. Davidson, Inc.*, 128 S.W.3d at 229.  Therefore, Karen has not shown that she is entitled to summary judgment as a matter of law.  *See* TEX. R. CIV. P. 166a(c).  We sustain the remainder of Kelcey's second issue.[13]

### FRAUDULENT INDUCEMENT

In her third issue, Kelcey argues that the trial court erred in granting a no-evidence summary judgment against her affirmative defense of fraudulent inducement related to the April 2016 Document.

**Applicable Law**

Litigants may bring a claim for fraudulent inducement (sometimes referred to as "fraud in the inducement") as a separate contract-specific fraud claim or allege it as an affirmative defense to enforcement of a contract.  *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019); *Taft v. Sherman*, 301 S.W.3d 452, 457 (Tex. App.—Amarillo 2009, no

---

[12] *See Acknowledge*, Oxford English Dictionary, https://www.oed.com/search/dictionary/?q=acknowledge (last visited October 19, 2023); *Acknowledge*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/acknowledge (last visited October 19, 2023).

[13] Because we conclude that the trial court erred in granting summary judgment on this point, we do not reach Kelcey's arguments on lack of consideration or fraudulent inducement in our review of Kelcey's second issue. *See* TEX. R. APP. P. 47.1.

pet.).  The elements of fraud in the inducement, as applied to this case are: 1) Karen made a material misrepresentation that was false, 2) Karen knew the representation was false when made or made it recklessly as a positive assertion without any knowledge of its truth, 3) Karen intended to induce Kevin  to act upon the representation, and 4) Kevin actually and justifiably relied upon the representation, and thereby, suffered injury.  *Int'l Bus. Machines Corp*, 573 S.W.3d at 228.

Fraudulent inducement may serve as grounds to set aside a contract, but in certain circumstances, a contract's terms may preclude a claim for fraudulent inducement by including a disclaimer-of-reliance clause.  *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 332.  The question of whether an adequate disclaimer of reliance exists is a matter of law.  *Id.* at 333.  To disclaim reliance, parties must use "clear and unequivocal language."  *Id.* at 333; *see also* *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 62 (Tex. 2008); *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 179-80 (Tex. 1997).  This "elevated requirement" exists because courts have a "clear desire to protect parties from unintentionally waiving a claim for fraud[.]" *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 332 (citing *Schlumberger*, 959 S.W.2d at 179).

**Analysis**

Karen moved for summary judgment on the sole ground that the April 2016 Document contains an adequate disclaimer of reliance in the following sentence:

> This decision was made after a thorough reading of the will of the late Helen Brown Wells and was made without the influence of any other person or persons who are also heirs to the estate of Helen Brown Wells.

Karen contends that this paragraph operates as a disclaimer of reliance on any extracontractual representations by her, and therefore negates the element of reliance necessary for fraudulent inducement.

Neither Kelcey's response to the motion for summary judgment nor her brief or reply on appeal responds to or addresses Karen's argument regarding the alleged disclaimer of reliance. Instead, Kelcey cites to several excerpts from Karen's deposition (wherein Kelcey alleges Karen admitted to making false representations to Kevin) and claims that the cited testimony raises a genuine issue of material fact on fraudulent inducement as a whole.  In fact, Kelcey does not

provide any briefing or analysis at all on the element of reliance, only stating in a conclusory fashion that Kevin exhibited such reliance by signing the April 2016 Document.

To succeed on a challenge to a no-evidence summary judgment motion, "the nonmovant must file a written response that points out evidence that raises a fact issue on the challenged elements." *Holloway v. Texas Elec. Util. Const., Ltd.*, 282 S.W.3d 207, 213 (Tex. App.—Tyler 2009, no pet.). When a non-movant to a no-evidence motion for summary judgment does not address the challenged elements or produce evidence raising a fact issue on those elements, the trial court must grant summary judgment in the movant's favor. TEX. R. CIV. P. 166a(i); *Lewis v. Aurora Loan Servs.*, No. 01-15-00362-CV, 2016 WL 887176, at *3 (Tex. App.—Houston [14th Dist.] Mar. 8, 2016, no pet.) (mem. op.) (citing *Plotkin v. Joekel*, 304 S.W.3d 455, 478 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). On appeal, we cannot consider issues not expressly presented to the trial court by written motion, answer, or other response as grounds for reversal. *Holloway*, 282 S.W.3d at 211. Kelcey failed to present more than a scintilla of evidence that would raise a genuine issue of material fact on the challenged element of reliance. *See* *KMS Retail Rowlett, LP*, 593 S.W.3d at 181. Thus, we cannot conclude that the trial court erred in granting summary judgment on Kelcey's affirmative defense of fraudulent inducement. Accordingly, we overrule Kelcey's third issue.

STANDING

In her fourth issue, Kelcey claims that the trial court erred in granting summary judgment on a total of seventeen claims and affirmative defenses and dismissing same on the ground that, because of the court's previous summary judgment rulings to date, she lacks standing.

In support of her motion, Karen submitted as summary judgment evidence Don's will and codicil, Helen's will, the order admitting Don's will to probate, and the court's three previous orders granting summary judgment. In summary, Karen argued that the trial court's summary judgment rulings eliminated Kelcey's status as an "interested person" to any claims related to the Residuary Trust or Helen's estate, such that Kelcey now lacked standing to bring said claims. Karen maintains this argument on appeal. Having reviewed the record in general and the trial court's orders in particular, it appears that (excepting the portion of item (17) which addresses Kelcey's affirmative defense of fraudulent inducement) each of the trial court's findings relies on one or both of the conclusions that (1) Helen exercised the testamentary power of appointment,

or (2) the April 2016 Document was an assignment by Kevin to Karen of his rights in Helen's estate. Because we sustain Kelcey's first and second issues *infra*, the trial court's previous summary judgment findings cannot support Karen's entitlement to summary judgment on any related issues.

Moreover, because we conclude that the trial court properly granted summary judgment on Kelcey's affirmative defense of fraudulent inducement, and the trial court dismissed this defense on other grounds in its previous order, the portion of item (17) which addresses this defense is without effect.

For these reasons, we sustain Appellant's fourth issue.

## LIMITATIONS

In her sixth issue, Kelcey argues that the trial court erred in granting Karen's motion for partial summary judgment as to her claims for breach of fiduciary duty, thereby finding that said claims were barred by limitations.[14] In particular, the parties dispute the date on which the claim accrued, and therefore when the statute of limitations began to run.

### Applicable Law

To obtain traditional summary judgment on a limitations defense, a defendant must conclusively prove (1) when the cause of action accrued, and (2) that the plaintiff brought its suit later than the applicable number of years thereafter—i.e., that "the statute of limitations has run." *Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 220 (Tex. 2004)). Where the plaintiff raises the discovery rule (or another tolling doctrine) in response, the defendant also bears the burden of negating the rule. *Draughon*, 631 S.W.3d at 89.[15] A defendant moving for traditional summary judgment may negate the discovery rule by either conclusively establishing that (1) the discovery rule does not apply, or (2) if the rule applies, the summary judgment evidence demonstrates that the plaintiff discovered, or reasonably should have discovered, its injury within the limitations period. *Id.; see also* **Shield v. Bio-Synthesis, Inc.**, No. 02-21-00160-CV, 2022 WL 2840111, at \*5 (Tex.

---

[14] We address Kelcey's sixth issue before her fifth issue here for clearer organization.

[15] The discovery rule is a limited exception to the usual rule that a cause of action accrues when a wrongful act causes some legal injury. The discovery rule defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action. *Berry v. Berry*, 646 S.W.3d 516, 524 (Tex. 2022).

19

App.—Fort Worth July 21, 2022, no pet.) (mem. op.). The burden to show a genuine issue of material fact only shifts to the nonmovant plaintiff once the defendant has conclusively established its entitlement to traditional summary judgment. *Draughon*, 631 S.W.3d at 91 (citing *Oram v. General American Oil Co. of Texas*, 513 S.W.2d 533, 534 (Tex. 1974) (per curiam)). Generally, when a plaintiff discovers or should have discovered the cause of the injury and whether a particular plaintiff exercised due diligence in so discovering the injury are fact questions. *LaTouche v. Perry Homes, LLC*, 606 S.W.3d 878, 884 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

An action for breach of fiduciary duty is subject to a four-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5) (West 2023).

**Analysis**

Kelcey argues generally that Karen did not conclusively prove when the cause of action for breach of fiduciary duty accrued. She contends that in an action for breach of fiduciary duty by a trustee, the claim does not accrue until the trustee both repudiates the trust and notifies the beneficiaries. Since Karen never notified either Kevin or Kelcey that the Residuary Trust existed or that they were beneficiaries thereof, Kelcey claims that accrual of the cause of action was delayed. Kelcey further argues that even if Karen at some point repudiated the Residuary Trust, she also fraudulently concealed her wrongful actions, and that this concealment (as well as the discovery rule) should toll the statute of limitations. Kelcey argues that she first asserted a claim for breach of fiduciary duty in her Second Amended Petition filed on November 9, 2018, and first specifically alleged that Karen breached her fiduciary duty by failing to make distributions in her Fourth Amended Petition filed December 28, 2018.

Karen asserts that because she filed a copy of Don's will with her initial application to probate the will and for issuance of letters testamentary on November 18, 2015 (and the will was therefore public record), Kevin and Kelcey should have discovered their respective claims for breach of fiduciary duty as of that date, and the discovery rule should not apply to defer the accrual of the cause of action any later than that date. Karen further contends that Kelcey first asserted the claim in her Fifth Amended Petition, which she filed on April 15, 2020 (but

20

thereafter abandoned it in her Sixth Amended Petition), more than four years after November 18, 2015.[16]

A claim for breach of fiduciary duty against a trustee does not accrue until after the trustee has done some act that shows repudiation of the trust and the beneficiary either has notice of, or by reasonable diligence should discover, the repudiation of the trust. *Matter of Jackson's Est.*, 613 S.W.2d 80, 83 (Tex. Civ. App.—Amarillo 1981) (*aff'd sub nom Harrison v. Parker*, 620 S.W.2d 102 (Tex. 1981)); *Burton Mill & Cabinet Works, Inc. v. Truemper*, 422 S.W.2d 825, 827–28 (Tex. Civ. App.—Waco 1967, writ ref'd n.r.e.). Similarly, the statute of limitations cannot begin to run against a trust beneficiary following a trustee's repudiation where said beneficiaries had no knowledge of the trust's existence. *Morris v. Texas Elks Crippled Children's Hosp., Inc.*, 525 S.W.2d 874, 879 (Tex. Civ. App.—El Paso 1975, writ ref'd n.r.e.) (citing *Rice v. Ward*, 92 Tex. 704, 707 (1899)). Generally, accrual of a claim is not delayed when information that would reveal the existence of a legal injury is publicly available. *Berry v. Berry*, 646 S.W.3d 516, 525 (Tex. 2022). Specifically, "[p]ersons interested in an estate *admitted to probate* are charged with notice of the contents of the probate records." *Vanderpool v. Vanderpool*, 442 S.W.3d 756, 762 (Tex. App.—Tyler 2014, no pet.) (emphasis added).[17] Therefore, a limitations period based on knowledge of the contents of probate records (including knowledge of the contents of a will) begins to run when the will is admitted to probate. *Burns v. Burns*, No. 12-22-00256-CV, 2023 WL 3033145, at *4 (Tex. App. —Tyler Apr. 20, 2023, pet. denied) (mem. op.) (citing *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981)).

Don's will, which created the Residuary Trust, was admitted to probate as a muniment of title on March 14, 2017. Karen does not contest Kelcey's claim that she failed to inform Kevin or Kelcey that the Residuary Trust existed, but she incorrectly asserts that Kelcey is charged with constructive notice of the contents of the will on the day a copy was filed as part of an application for probate. Rather, Kelcey (as an interested person in her role as representative of

---

[16] We note that before the trial court, Karen argued that the statute of limitations began to run on Kelcey's breach of fiduciary duty claims on December 13, 2013, the day of Helen's death and allegedly the day the Residuary Trust terminated. She did not cite any legal authority for this assertion and seems to have abandoned this argument on appeal. Further, Karen initially alleged that Kelcey first asserted her claim for breach of fiduciary duty in her Eighth Amended Petition on November 8, 2021, but then later stated that the first assertion occurred in Kelcey's Seventh Amended Petition on September 20, 2021.

[17] An interested person is, relevant to this matter, "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered." TEX. EST. CODE ANN. § 22.018 (West 2023).

Kevin's estate) could only have been charged with constructive knowledge of the contents of Don's will as of March 14, 2017, the date on which the will was admitted to probate. *See Vanderpool*, 442 S.W.3d at 762. However, the inquiry as to claim accrual does not end there. Because Karen argues that Kelcey's claims are barred by limitations, she necessarily argues that those claims have already accrued, and consequently, that the needed act of repudiation has already occurred. *See Matter of Jackson's Est.*, 613 S.W.2d at 83. But Karen provides no legal authority or substantive analysis to establish *when* that repudiation took place (or even whether it occurred before or after Don's will was admitted to probate), nor does she submit any date certain upon which Kelcey knew or should have known of such repudiation. Consequently, Karen did not conclusively prove when Kelcey's cause of action for breach of fiduciary duty accrued. *See Draughon*, 631 S.W.3d at 89. Viewing the available evidence in the light most favorable to the non-moving party, and resolving all doubts against the motion, we conclude that Karen did not conclusively establish her entitlement to traditional summary judgment on the affirmative defense of limitations.[18] *Id.* We sustain Kelcey's sixth issue.

### DISTRIBUTIONS FOR HEALTH, EDUCATION, MAINTENANCE, AND SUPPORT

In her fifth issue, Kelcey contends that the trial court erred in granting a no-evidence summary judgment on her claims for failure to make distributions from the Residuary Trust.[19]

### Applicable Law

A no-evidence motion for summary judgment must identify the essential element as to which there is no evidence and must be specific in challenging the evidentiary support for an element of a claim, and we must strictly enforce this requirement. *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 695 (Tex. 2017); *Douglas v. Hardy*, 600 S.W.3d 358, 365 (Tex. App.—Tyler 2019, no pet.). A motion that is not specific in challenging a particular element of a claim or defense is insufficient as a matter of law. *Bean v. Reynolds Realty Grp.*,

---

[18] Because we find that Karen did not conclusively establish the date on which Kelcey's claim accrued, we do not reach her argument alleging Kelcey's abandonment of the cause of action. *See* TEX. R. APP. P. 47.1. Moreover, it is not clear from the record that Karen properly raised the issue of abandonment before the trial court, so it is questionable whether this argument was preserved for appellate consideration. *See Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) (litigants generally cannot raise new, non-jurisdictional issues on appeal).

[19] Karen states that this motion was filed after the motion for summary judgment on limitations, in the event that the first motion as to these claims was denied.

Inc., 192 S.W.3d 856, 859 (Tex. App.—Texarkana 2006, no pet.). More specifically, a motion that only generally attacks a factual theory, without specifying the elements of the claims being attacked, is insufficient to support a no-evidence summary judgment. *Garcia v. State Farm Lloyds*, 287 S.W.3d 809, 819 (Tex. App.—Corpus Christi 2009, pet. denied). And if a no evidence motion for summary judgment is not specific in challenging a particular element, the motion is legally insufficient as a matter of law and may be challenged for the first time on appeal. *Neurodiagnostic Tex, L.L.C. v. Pierce*, 506 S.W.3d 153, 177 (Tex. App.—Tyler 2016, no pet.); *Coleman v. Prospere*, 510 S.W.3d 516, 519 (Tex. App.—Dallas 2014, no pet.); *Garcia*, 287 S.W.3d at 818.

**Analysis**

Karen's no-evidence motion specifically requests summary judgment on Kelcey's "Claim for Distributions for Health, Education, Support, and Maintenance," and moves the trial court for a finding that there is "no evidence to support [Kelcey's] cause of action that [Karen] should have made distributions to Kelcey Wells and/or Kevin Wells under the will of Don L. Wells for their health, education, support and maintenance." Kelcey's Eighth Amended Petition, her live pleading at the time Karen filed this motion, does not contain a cause of action by this name. Instead, Karen's failure to make distributions from the Residuary Trust is alleged as one of *several* ways in which Karen breached her fiduciary duty as trustee of said trust. However, Karen's motion for summary judgment neither identifies the relevant claim as one for breach of fiduciary duty nor clearly sets forth the element or elements of breach of fiduciary duty on which she claims Kelcey cannot produce evidence sufficient to raise a genuine issue of material fact. *See Douglas*, 600 S.W.3d at 365. Rather, Karen alleges that Kelcey cannot produce evidence as to five items of "required proof," which Kelcey claims are necessary for "a finding that [Kelcey] and/or Kevin Wells should have received either income or principal distributions" from the Residuary Trust. Specifically, Karen alleges that "at a minimum," to show any entitlement to distributions, Kelcey would have to provide evidence: (1) that Helen had sufficient income to provide for her own health, education, maintenance, and support; (2) of the net income for the Residuary Trust for the relevant period; (3) of the net incomes of Kelcey, Kevin, and Karen for the relevant period; (4) of the HEMS expenses of Kelcey, Kevin, and Karen for the relevant

23

period; and (5) of fraud, misconduct, or "clear abuse of discretion" by either Helen or Karen in denying any claim for distributions.[20]

Karen did not cite to Don's will or any legal authority as the source of the items she alleges are "required proof" of the nonexistent "claim for distributions." Moreover, although they may be evidentiary facts, none of the specified items individually is an essential element of a claim for breach of fiduciary duty (or of any of the claims in Kelcey's Eighth Amended Petition).[21] *See* **Humphrey v. Pelican Isle Owners Ass'n**, 238 S.W.3d 811, 814 (Tex. App.— Waco 2007, no pet.). Similarly, "a finding that [Kelcey] and Kevin Wells should have received . . . distributions" from the Residuary Trust is not an essential element of a claim for breach of fiduciary duty, particularly as Kelcey alleged several other ways in which Karen breached her fiduciary duty as trustee. Therefore, the trial court could not have granted summary judgment on these grounds. *See* **Cmty. Health Sys. Pro. Servs. Corp.**, 525 S.W.3d at 695-96 (affirming reversal of summary judgment where issue asserted in no-evidence motion was not an essential element of the challenged claim).

Kelcey raises as a general point of error that the trial court erred in granting Karen's motion but does not specifically raise insufficiency of the motion as a ground for reversal. Nevertheless, the Texas Supreme Court has held that a general point of error stating that the trial court erred in granting the motion for summary judgment will allow the nonmovant to dispute on appeal all possible grounds for the judgment. **Bean**, 192 S.W.3d at 859 (citing **Plexchem Int'l, Inc. v. Harris County Appraisal Dist.**, 922 S.W.2d 930-931 (Tex. 1996)). In this case, Karen's motion set forth no grounds on which the trial court could grant a no-evidence summary judgment. And since a nonmovant need not object before the trial court to a motion for summary judgment that is legally insufficient, we conclude we have the discretion to consider the legal insufficiency of this summary judgment motion despite Kelcey's raising the issue by a general point of error. *See* **Neurodiagnostic Tex, L.L.C.**, 506 S.W.3d at 177; **Coleman**, 510 S.W.3d at

---

[20] Karen's allegations in the motion *appear* to challenge the element of breach of a fiduciary duty—indeed, she states for the first time on appeal that "[Kelcey] could not possibly prove that [Karen] breached her duty as trustee under . . . the residuary trust," but never made this allegation before the trial court. Similarly, Karen raises the issue of the limitation on liability contained in Don's will for the first time on appeal, so we do not consider this argument.

[21] Generally, to recover for a breach of a fiduciary duty, the plaintiff must establish: (1) the existence of a fiduciary duty, (2) a breach of the duty, (3) causation, and (4) damages resulting from the breach. **McEndree v. Volke**, 634 S.W.3d 413, 419 (Tex. App.—Eastland 2021, no pet.); *see also* **First United Pentecostal Church of Beaumont v. Parker**, 514 S.W.3d 214, 220 (Tex. 2017).

519; *Garcia*, 287 S.W.3d at 818. Because Karen's motion for no-evidence summary judgment is legally insufficient, we conclude the trial court erred in granting summary judgment thereon. We sustain Kelcey's sixth issue.

## ATTORNEY'S FEES

Finally, in her seventh issue, Kelcey contends that the trial court erred in its award of attorney's fees to Karen.

Attorney's fees are not recoverable unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006). The Texas Civil Practice & Remedies Code provides that in any proceeding under the Texas Uniform Declaratory Judgment Act, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2023). Importantly, prevailing party status is not a prerequisite to an award of attorney's fees in a declaratory judgment action; the court may also award costs to a non-prevailing party if such award would be equitable and just. *Id.*; *see also State Farm Lloyds v. C.M.W.*, 53 S.W.3d 877, 894 (Tex. App.—Dallas 2001, pet. denied).

The trial court's order specifies that the award of attorney's fees is based on Section 37.009. It finds the sum of $66,098.61 to be reasonable and necessary attorney's fees for the representation by Karen's counsel "in the Declaratory Judgment issues in this matter," and that $25,000.00 is a reasonable and necessary fee "in defending an unsuccessful appeal of this matter." Further, the order states that an award of reasonable and necessary attorney's fees "is equitable and just in this matter." The order does not reflect the trial court's basis for these findings. On appeal, Kelcey argues, "[G]iven the fraudulent conduct that Karen admittedly engaged in, it was not reasonable and just to also award Karen attorney's fees." Kelcey does not cite to any legal authority in support of this assertion.

"Where the extent to which a party prevailed has changed on appeal, our practice has been to remand the issue of attorney fees to the trial court for reconsideration of what is equitable and just." *Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 712 (Tex. 2021) (citing *Morath v. Tex. Taxpayer & Student Fairness Coalition*, 490 S.W.3d 826, 885 (Tex. 2016)). On remand, the degree of success obtained should be the most critical factor in determining reasonableness of a fee award. *Id.* at 713 (internal quotation marks omitted) (citing *Smith v. Patrick W.Y. Tam Tr.*,

296 S.W.3d 545, 548 (Tex. 2009)). We have concluded on appeal that the trial court erred by granting five of Karen's six motions for summary judgment, but also that the trial court correctly granted Karen's motion for summary judgment on Kelcey's affirmative defense of fraudulent inducement.[22] Therefore, the extent to which Karen prevailed has changed greatly. *See Geter*, 620 S.W.3d at 712. However, because the record does not reflect the trial court's reasons for its award of fees to Karen, there is no evidence to indicate whether the trial court's award of fees would remain equitable and just given our opinion in this case, and the trial court should reconsider the award in light of our decision herein. *See C.M.W.*, 53 S.W.3d at 894-95.

We sustain Kelcey's seventh issue.


## DISPOSITION

Having sustained Kelcey's first issue, we ***reverse*** the trial court's order of June 10, 2019, granting Karen's motion for partial summary judgment and denying Kelcey's cross-motion for partial summary judgment, and ***render*** judgment granting Kelcey's cross-motion for partial summary judgment and denying Karen's motion for partial summary judgment.

Having sustained Kelcey's second issue, we ***reverse*** the trial court's order of September 28, 2021, granting Karen's motion for partial summary judgment on the issue of Kevin's alleged assignment of his inheritance rights to Karen, and ***remand*** the cause to the trial court for further proceedings consistent with this opinion.

Having overruled Kelcey's third issue, we ***affirm*** the trial court's order of September 28, 2021, granting Karen's motion for partial summary judgment on Kelcey's affirmative defense of fraudulent inducement.

Having sustained Kelcey's fourth issue, we ***reverse*** the trial court's order of February 8, 2022, granting Karen's motion for partial summary judgment on the issue of standing, and ***remand*** the cause to the trial court for further proceedings consistent with this opinion.

Having sustained Kelcey's fifth issue, we ***reverse*** the trial court's order of February 8, 2022, granting Karen's motion for partial summary judgment on the issue of limitations and ***remand*** the cause to the trial court for further proceedings consistent with this opinion.

---

[22] We note that counsel for Karen estimates in his affidavit that "only ten (10) percent of the attorney's fees incurred dealt with the distributions causes of action and the claim of fraudulent inducement and other non-declaratory judgment matters."

26

Having sustained Kelcey's sixth issue, we *reverse* the trial court's order of February 8, 2022, granting Karen's motion for partial summary judgment on Kelcey's alleged "claim for distributions," and *remand* the cause to the trial court for further proceedings consistent with this opinion.

Having sustained Kelcey's seventh issue, we *reverse* the trial court's order of December 28, 2022, awarding attorneys' fees to Karen and *remand* the issue of attorneys' fees to the trial court for reconsideration in light of this opinion.

**GREG NEELEY**
Justice

Opinion delivered November 8, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 8, 2023**

**NO. 12-23-00066-CV**

**IN THE MATTER OF THE ESTATE OF HELEN GAYLE WELLS, DECEASED**

Appeal from the County Court at Law No 3
of Smith County, Texas (Tr.Ct.No. 42,565P)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the court below should be reversed and remanded in part, reversed and rendered in part, and affirmed in part.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be **reversed in part** and **remanded** for further proceedings as to (1) the trial court's order of September 28, 2021, granting Appellee Karen Donnell Wells's motion for partial summary judgment on the issue of Kevin Wells's alleged assignment of his inheritance rights to Appellee, (2) the trial court's order of February 8, 2022, granting Appellee's motion for partial summary judgment on the issue of standing, (3) the trial court's order of February 8, 2022, granting Appellee's motion for partial summary judgment on the issue of limitations, (4) the trial court's order of February 8, 2022, granting Appellee's motion for partial summary judgment on Appellant Kelcey Melissa Wells's alleged "claim for distributions," and (5) the trial court's order of December 28, 2022, awarding attorney's fees to Appellee.

It is therefore FURTHER ORDERED, ADJUDGED and DECREED that the judgment of the court below be **reversed in part** as to the trial court's order of June 10, 2019, granting Appellee's motion for partial summary judgment and denying Appellant's cross-motion for partial summary judgment and judgment *rendered* granting Appellant's cross-motion for partial summary judgment and denying Appellee's motion for partial summary judgment.

In all other respects, the judgment of the trial court is ***affirmed***.

It is FURTHER ORDERED that all costs of this appeal are hereby adjudged against the Appellee, **KAREN DONNELL WELLS**, for which execution may issue; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*